**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INEKE DEAN, on behalf of A.L.D. a minor, | ) |
| | ) |
| Plaintiff | ) |
| | ) No. 14 C 10373 |
| v. | ) |
| | ) |
| | ) Magistrate Judge Michael T. Mason |
| NANCY A. BERRYHILL, Acting Commissioner | ) |
| of Social Security,[1] | ) |
| Defendant | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Ineke Dean ("Dean") has filed a motion for summary judgment seeking judicial review of the final decision of the Commissioner for Social Security ("Commissioner"). Dean seeks Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on behalf of her minor child ("claimant" or "A.L.D."). The parties consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons set forth below, Dean's motion for summary judgment is granted in part [18], the Commissioner's motion for summary judgment [26] is denied, and the case is remanded to the Administrative Law Judge (the "ALJ") for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

Dean filed this action for SSI on behalf of A.L.D. on January 30, 2012. (R. 61.)

---

[1]Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

1

She bases her claim on A.L.D.'s Attention Deficit Hyperactivity Disorder ("ADHD"), learning disabilities and speech problems. (R. 69.) She alleges a disability onset date of April 18, 2007. (R. 116.) The claim was initially denied on April 20, 2012. (R. 66.) A request for reconsideration was filed on May 25, 2012, which was denied on October 1, 2012. (R. 70.) Dean filed a request for a hearing on November 8, 2012, and the hearing was held on September 12, 2013. (R. 82, 100.) The ALJ denied her claim on September 24, 2013, and Dean subsequently filed this action. (R. 14-28.)

## II. FACTUAL BACKGROUND

Claimant was born on April 8, 2007. (R. 61, 116.) He was five years old when he applied for SSI (R. 61-62), but was six years old on the date of the ALJ's decision. (R. 14-23.) Claimant has no work experience or earnings due to his age. (R. 124-28) Claimant lives with his motion. (R. 61-62.)

### A. Medical and Education Evidence

The administrative records begin with claimant's initial Chicago Public Schools ("CPS") evaluation from his pre-kindergarten class at George Rogers Clark Elementary School. (R. 152-213.) On September 14, 2010, A.L.D. was three and a half years old. (R. 153.) At Dean's request, Dara Sanders did a social work evaluation addressing A.L.D.'s speech and behavioral issues. (*Id.*) Ms. Sanders found that claimant had some academic delays and unclear speech, but would benefit from more individual instruction and consistent attendance at school. (R. 154.)

On November 22, 2010, a meeting with Dean and claimant's teachers resulted in a determination that claimant was eligible for an Individualized Education Plan ("IEP"), which would include special education classes and related services. (R. 155-159.) The

report noted that claimant was diagnosed with developmental delays and a speech/language impairment.  (R. 160.)  He also had articulation problems that adversely impacted his ability to communicate in the classroom.  (R. 158.)  A cognitive assessment was performed, and claimant earned a Full Scale IQ score of 80.  (*Id.*)

On November 8, 2010, Diana Hayes, a CPS nurse, conducted an assessment of claimant that included an interview and class observation.  (R. 161-62.)  Ms. Hayes noted that A.L.D. was healthy, friendly, pleasant, and cooperative, but he had a difficult time focusing and listening to questions long enough to give appropriate answers.  (R. 162-63.)  She also found that he had reached developmental milestones within normal limits except for his speech delay.  (R. 164.)  In her classroom observations, she noted that he sat quietly during story time and actively participated in class activities.  (*Id.*)

In November of 2010, Jada Bell, a speech pathologist, conducted a Speech and Language Assessment.  (R. 165-67.)  The assessment revealed that there were no health concerns that would impact academic performance.  (*Id.*)  Ms. Bell noted that claimant had received early intervention services in speech and developmental therapy, and that his teachers reported concerns in the areas of communication, socialization, and self-help skills.  (R. 165.)  She observed that claimant's speech was difficult to understand more than 50 percent of the time.  (R. 166.)  Ms. Bell also administered the Goldman Fristoe Test of Articulation, which revealed that claimant was equivalent to a two or three year old and that he exhibited multiple speech issues affecting his ability to be understood.  (*Id.*)  Ms. Bell opined that claimant's communication impairment adversely affects his educational performance and social interactions.  (R. 166-67.)

On October 25, 2010, Jianxiang Yang, a psychologist, conducted a psychological evaluation because A.L.D. was not acting at an appropriate age level. (*Id.*) An interview with his teachers revealed that claimant was very energetic and active and had delayed development in communication, socialization, and self-help skills. (*Id.*) Ms. Yang noted that claimant was impulsive and unable to follow simple directions. (R. 177.) Dean reported to Ms. Yang her concerns about claimant's inability to express himself, his speech delays and his behavior. (*Id.*)

Ms. Yang administered the Stanford-Binet Intelligence Test and A.L.D. earned an 86 in nonverbal IQ (which is low average range of cognitive functioning), a 76 in verbal IQ (borderline range), and an 80 in full scale IQ (low average range). (R. 178.) These results revealed a significant discrepancy between his verbal and nonverbal reasoning skills. (*Id.*) Ms. Yang also administered the Vineland Adaptive Behavior Scales – II. (R. 177.) A.L.D.'s scores on this test were all in the low range and showed that his adaptive skills were generally delayed in communication, socialization and self-help skills. (R.178-79.)

On November 11, 2011, CPS held another IEP meeting with Dean and A.L.D.'s teachers to discuss claimant's developmental delays and speech/language impairment. (R. 180.) At this time, claimant was four years, seven months old and was in pre-kindergarten. (*Id.*) At the meeting, the teachers discussed that A.L.D had difficulty focusing, he was impulsive and he had difficulty with expressive language and comprehension. (R. 182.) They also discussed recent improvement with his articulation skills, and there were no significant behavioral issues. (R. 182-85.) As part

of the IEP report, claimant was evaluated in terms of whether he was functioning at an age appropriate level - he scored a 6 out of 7 on this test.  (R. 354.)

On March 15, 2012, Debra Williams, claimant's special education teacher, completed a Teacher Questionnaire.  (R. 168-75.)  She noted that claimant had difficulties in the following domains: Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Himself.  (*Id.*)  In several subcategories for these domains, Ms. Williams noted "obvious" and "serious" problems, especially in Attending and Completing Tasks and Acquiring and Using Information.  (*Id.*)  She opined that claimant had a "serious problem" with reading and comprehending written material, expressing ideas in written form and recalling and applying previously learned material.  (R. 169.)  She also noted an "obvious problem" with comprehending oral instructions, comprehending and doing math problems, providing organized oral explanations or descriptions and learning new material.  (*Id.*)  With respect to Attending and Completing Tasks, she indicated that claimant "usually rushes to complete less favored activities, in order to move on to activities he enjoys." (R. 170.)  In the Interacting and Relating with Others domain, Ms. Williams only found that he had a "slight problem" with some of the activities referenced in this domain, such as playing cooperatively with other children, seeking attention appropriately and following rules.  (R. 171.)

On September 9, 2011, Dr. Emily Lovaasen saw claimant for a wellness checkup at the Austin Family Health Center ("AFHC").  (R. 256.)  Dr. Lovaasen reported that claimant was healthy and that his mother had concerns about his behavior.  (R. 257.) Claimant's next visit to AFHC was on December 1, 2011 and no behavioral issues were

reported at that time. (R. 252-55.) He had several follow up visits at AFHC where no health issues were reported but Dean continued to express her concerns about claimant's ADHD, behavioral problems, learning disabilities, and speech issues. (R. 313.) On July 16, 2012, a social worker at AFHC, Gwendolyn Haywood, diagnosed claimant with ADHD. (R. 322-24.) On August 3, 2012, Jill Degan performed a psychiatric evaluation and recommended a prescription of Adderall for claimant's ADHD symptoms. (R. 321.) On March 12, 2013, social worker Marsha Robinet performed a psychological assessment and noted claimant's hyperactivity and impulsive behavior, such as being fidgety and having difficulty waiting his turn. (*Id.*)

On November 9, 2012, A.L.D.'s teachers met with his mother again to discuss his progress, his disabilities and his IEP. (R. 332-366.) The IEP stated that A.L.D. should spend half of his time at school in the general education classroom and the other half in special education. (R. 345.) A.L.D.'s teachers also noted that claimant was able to recognize most of the letters, he was able to count up to ten, his math skills were emerging but he has difficulty focusing, he has difficulty sounding out the letters of the alphabet, and he has an overall difficulty with expressive language and comprehension. (R. 334-35.) They also noted that A.L.D. is impulsive, easily distracted, and is often unable to answer comprehension questions correctly. (R. 335.) With respect to communication, the teachers noted that his overall articulation skills had improved and that he demonstrated age-appropriate, intelligible speech but still has some developmental issues. (*Id.*) They also noted his attention span was very short and he often moves from one activity to another before completing a task. On September 13, 2013, Nora Sund, claimant's special education teacher, completed a Teacher

Questionnaire. (R. 406-10.) The questionnaire was divided into sections for the relevant domains. For Acquiring and Using Information, Ms. Sund related that claimant has a difficult time concentrating and listening and requires constant redirection. (R. 406.) In the Attending and Completing Tasks section, Ms. Sund noted that he was easily distracted. (R. 407.) In Interacting and Relating with Others, Ms. Sund reported that claimant had difficulty interacting with students in his regular classes but that there were no issues with classmates in his special education classes. (R. 408.) Ms. Sund also reported that she understands claimant only 50% of the time the first time he says something. (*Id.*) She also noted that he has no issues or problems in the Moving and Manipulating Objects domain. (R. 409.) Lastly, in the Caring for Himself section, Ms. Sund reported that claimant has serious problems with handling frustration and being patient, and with using good judgment regarding personal safety or knowing when to ask for help. (*Id.*) He had no problem caring for physical needs such as dressing, eating or personal hygiene. (*Id.*)

## B. State Agency Examiners

After Ms. Dean applied for SSI, the Bureau of Disability Determination Services recommended a Psychological and Formal Mental Status evaluation, and a Speech and Language evaluation. (R. 268-80.) Dr. Harvey Friedson conducted an evaluation on March 17, 2012. (R. 268-73.) Dr. Friedson administered the Wechsler Preschool and Primary Scale of Intelligence test, which revealed that claimant was testing within the borderline range with the following scores: a Verbal IQ of 85, Performance IQ of 67, and Full Scale IQ at 73. (R. 270-71.) Dr. Friedson also found that claimant did have articulation issues but he could understand him 90% of the time. (R. 272-73.) He

diagnosed claimant with phonological-articulation disorder, a learning disorder, and he found that claimant was testing within the borderline range. (R. 273.)

Dr. Thomas Chibucos also conducted a speech and language evaluation of claimant. (R. 276.) He found that claimant did make errors during the articulation portion of the exam, but his speech was intelligible 90%-100% in known and unknown contexts. (R. 277.) On the receptive language portion, claimant achieved a standard score of 91, with a percentile rank of 27 and an age equivalency of four years and three months. (R. 278.) Dr. Chibucos found A.L.D's receptive language skills were developing typically and in an expected sequence. (*Id.*) On the expressive language portion, claimant achieved a standard score of 90, with a percentile rank of 25 and an age equivalency of four years and two months. (*Id.*) In summary, Dr. Chibucos found that A.L.D. demonstrates some typical articulation issues and average language development. (*Id.*)

On April 19, 2012, Dr. Donna Hudspeth conducted an SSA Childhood Disability Evaluation. (R. 281-86.) Dr. Hudspeth examined claimant's speech and language delay and his ADHD to determine the severity of the impairments. (R. 281-83.) Dr. Hudspeth first found that A.L.D.'s impairments or combination of impairments are severe, but do not meet, medically equal, or functionally equal the listings. (R. 281.) Dr. Hudspeth then evaluated claimant's domain-related activities and each activity was scaled as no limitation, less than marked, marked, and extreme. (R. 283-85.) An impairment is a "marked" and "severe" functional limitation if it meets two marked domains or an extreme limitation in one domain. (R. 283.) Dr. Hudspeth then found that A.L.D. had the following limitations: a less than marked limitation in Acquiring and

Using Information, a less than marked limitation in Attending and Completing Tasks, and a marked limitation in Interacting and Relating with Others. (*Id.*) She found no limitations in the remaining domains: Moving and Manipulating Objects, Caring for Yourself and Others, and Health and Physical Well-Being. (R. 284.) Dr. Hudspeth had reviewed education reports in order to reach her conclusions; it does not appear that she personally evaluated claimant.

On September 9, 2012, Dr. Elizabeth Kuester conducted an SSA Childhood Disability Evaluation. (R. 325-30.) A.L.D. was evaluated for speech and language delays, ADHD, and a learning disability. (R. 325.) Like Dr. Hudspeth, Dr. Kuester found that A.L.D. did have an impairment or combination of impairments that was severe; however, these impairments did not meet or equal the Listings. (*Id.*) Also like Dr. Hudspeth, Dr. Kuester found claimant had a less than marked limitation in Acquiring and Using Information, a less than marked limitation in Attending and Completing Tasks, and a marked limitation in Interacting and Relating with Others. (R. 327.) Similarly, she found no limitations in the remaining domains. (R. 328.)

### C. Hearing Testimony

#### 1. Claimant's Testimony

A.L.D. was born in 2007. (R. 35.) He briefly testified at a hearing before the ALJ on September 12, 2013. (R. 38.) He was six years old at the time and in first grade. (*Id.*) He stated that his favorite thing about school is gym, recess and art, and his least favorite thing about school is when he has to go to the office if he has done something bad like fighting or hitting someone. (R. 39-40.) He fights with people if they "pick on him or mess with him," at school and at home. (R. 40.) He does have two friends at

school and he is also friends with a neighbor. (*Id.*) He is able to dress himself in the morning and he can tie his own shoes. (R. 41.) He can also make himself a snack after school but his mom does that as well. (*Id.*) After school, A.L.D. likes to go home and play outside or play video games. (R. 42.)

### 2. Dean's Testimony

Dean also testified about her son at the hearing. She stated that she lives alone with her son. (R. 46.) Her biggest concern with A.L.D. is his attitude - for example, he talks back and is aggressive with her. (*Id.*) She has to tell him repeatedly to do something and he ignores her and does whatever he wants. (*Id.*) She also has concerns about his academics. (*Id.*) He rushes through homework, is easily distracted, is not able to read yet and is not able to do addition or subtraction. (R. 46-47, 50-51.)

She testified that one of claimant's teachers, Ms. Sund, mentioned that he is not focusing well in school and that he doing worse than he was last year. (R. 47.) Dean also testified that another teacher has mentioned that he disrupts the class and does not listen. (*Id.*) Dean was not aware of any time this school year that A.L.D. had been sent to the office for behavioral issues. (R. 49.) His teachers discipline him themselves in the classroom. (*Id.*) He has had a few fights with other kids after they made fun of him for being in special education classes, but these fights happened at home when he goes outside to play with his neighbors. (R. 49-50.)

His teachers have told Dean that claimant rushes through his school work, he does not focus well and he is easily distracted. (R. 51.) Dean testified that claimant's teachers have suggested medication might help with his focus and, in turn, his ability to read and do other homework. (R. 52.) Dean has filled out the Vanderbilt assessment

(a screening tool for ADHD medication) and she gave one to the teacher to fill out but the school misplaced it. (R. 53.) Dean stated that claimant's next IEP meeting was coming up and she hoped he would receive more help at school. (R. 53-54.)

When asked about chores, Dean testified that claimant tells her he cannot or will not do them. (R. 54.) Dean then testified that she dresses claimant because he often will not do it after being instructed to do so, that he can tie his shoes but not properly, and he can make a bowl of cereal. (*Id.*)

Dean was then questioned by the ALJ. (R. 56.) She testified that her son had no physical limitations. (*Id.*) The ALJ asked about the Adderall prescription, and she testified that the prescription could not be filled until the school fills out the form. (R. 56-58.) She stated she has not talked to a doctor about whether he should take Adderall. (R. 58.) There is a note in his medical records that they prescribed Adderall, but Dean stated she was not sure whether her medical card would cover it or whether he first needed an EKG. (R. 58-59.)

## III. LEGAL ANALYSIS

### A. Standard of Review

Judicial review of a decision denying SSI benefits to a child claimant is limited to determining whether the ALJ applied the correct legal standards in reaching his or her decision, and whether there is substantial evidence to support the relevant findings. *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001). In other words, we must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513,

516 (7th Cir. 2001).  It is "evidence a reasonable person would accept as adequate to support the decision."  *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).  In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516.  However, our review is deferential, and we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."  *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

Despite this deferential standard, the Court must undertake a "critical review of the evidence," and if the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it.  *Lopez*, 336 F.3d at 539 (citations omitted).  While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [his] conclusion."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected."  *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).  Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of [his] reasoning."  *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citation omitted).

### B. Analysis Under the Social Security Act

Under the Social Security Act, a child is disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe

12

functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(c)(I).  A three-step evaluation is required in order to determine whether a child is disabled.  20 C.F.R. § 416.924(a).  The first step is to determine whether the child is engaged in substantially gainful activity, and if he or she is, then the claim will be denied.  *Id.*  A child is engaged in substantially gainful activity if he or she is doing significant physical or mental activities for pay or profit.  20 C.F.R. § 416.972.  If a child is not engaged in substantially gainful activity, the next consideration is whether the child's physical or mental impairments are severe.  20 C.F.R. § 416.924(a).  If the child's impairment or combination of impairments is severe, then the next consideration is whether that impairment meets or is functionally equivalent to one of the listings of impairments in 20 C.F.R. Pt. 404 Subpt. P App. 1 (the "Listings").  *Id.*

To determine whether an impairment is the functional equivalent of a Listing, the ALJ must evaluate the combined effects of all medically determinable impairments, even those that are not severe.  *Id.*  In this analysis, the ALJ must determine whether the impairment or combination of impairments functionally equals the Listings by assessing the child's functioning in terms of the six domains: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Self; and 6) Health and Physical Well-being.  20 C.F.R. § 416.926a(b)(1).  In assessing these categories, how appropriately, effectively, and independently the child performs activities is compared to the performance of other children at the same age who do not have impairments.  *Id.*

Functional equivalence exists, and a child qualifies for benefits, if the child has a "marked limitation" in at least two of the six domains listed above or an "extreme limitation" in one of the categories. 20 C.F.R. § 416.926a(a). A marked limitation is when the child's impairment interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(I). It is defined as "more than moderate" but "less than extreme." *Id.* It is the equivalent of the functioning that would be expected on a standardized test that is at least two but not more than three standard deviations below the mean. *Id.* An "extreme limitation" is when the child's impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(ii). It is defined as any limitation that is more than marked, and it is equivalent to the functioning that can be expected on a standardized test that is more than three standard deviations below the mean. *Id.*

The evidence relevant to whether a child's limitations are marked or extreme involves both medical and non-medical sources. 20 C.F.R. § 416.924a(b)(3). The latter may include information from parents, teachers, and other people who know the child, and their descriptions of relevant activities in school, at home, or in the community. 20 C.F.R. §§ 416.924a(b)(3), (e).

### C. Administrative Law Judge Opinion

The ALJ followed the required three-step analysis in making his determination that A.L.D. did not qualify for disability benefits. First, the ALJ found that A.L.D. had not engaged in any substantially gainful activity since January 12, 2012, the application

date.  20 C.F.R. § 416.924(a).  (R. 17.)  At step two, the ALJ found that A.L.D. suffered from attention deficit disorder, a learning disability, and speech delays, all of which the ALJ found to be severe impairments, causing more than a slight limitation in functioning. (*Id.*)

At step three, the ALJ found that A.L.D. did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (R. 17-18.)  In particular, the ALJ found that A.L.D. did not meet the requirements for Listing 112.11 because he "at most exhibited less than marked inattention, impulsivity and hyperactivity."  (*Id.*)  The ALJ also evaluated the six domains of 20 C.F.R. § 416.926a(b) and (c), and found that A.L.D. had the following: a less than marked limitation in Acquiring and Using Information; a less than marked limitation in Attending and Completing Tasks; a marked limitation in Interacting and Relating with Others; no limitation in Moving About and Manipulating Objects; no limitation in Ability to Care for Himself; and no limitation in Health and Physical Well-Being.  (R. 18-28.)  Therefore, because A.L.D. did not have a marked limitation in two or more of the domains or an extreme limitation in one of the domains, the ALJ found that he is not disabled under the Act.  (R. 28.)

Dean now argues that the decision of the ALJ should be reversed or remanded for four reasons: 1) the ALJ failed to properly evaluate whether A.L.D. meets Listing 112.05D; 2) the ALJ applied the incorrect standard in evaluating A.L.D.'s functional equivalence listings; 3) the ALJ failed to properly evaluate the opinion of clamant's special education teacher, Nora Sund; and 4) the ALJ's credibility determination was not supported by substantial evidence.  We address each of Dean's arguments below.

## IV. ANALYSIS

### A. The ALJ Improperly Disregarded the Opinion of Nora Sund.

We first address the argument that the ALJ failed to properly consider the opinion of A.L.D.'s special education teacher, Nora Sund.  Dean argues that in Ms. Sund's Teacher Questionnaire, she found that A.L.D. had marked limitations in two domains: Acquiring and Using Information and Attending and Completing Tasks.  Dean asserts that the ALJ did not give proper weight to Ms. Sund's opinion, and instead he assigned more weight to the opinions of non-examining state agency consultants without properly analyzing Ms. Sund's opinion as evidence from a non-medical source.  Dean argues that if the ALJ had properly analyzed Ms. Sund's opinion, he would have determined that A.L.D. suffered from marked limitations in two domains (rather than just one), and therefore, he would have found that A.L.D. was disabled.

The Commissioner argues that the ALJ did properly analyze Ms. Sund's opinion. The Commissioner notes that the ALJ did not merely mention Ms. Sund's report, but he compared it with the medical evidence in the record and found that Ms. Sund indicated that claimant had more limitations than the medical evidence opined.  The Commissioner also argues that the ALJ explained that he was assigning more weight to the medical opinions because they were more consistent with the medical and educational records in evidence.  The Commissioner notes that the ALJ recognized that claimant has ADHD and some behavior problems, but noted that evidence suggested that he had improved his academic performance in the prior year, and he had the ability to work with peers in a classroom setting, get along with authority figures, follow simple instructions, and participate in reading lessons lasting fifteen minutes.

In rendering a decision on a disability, an ALJ must consider all relevant evidence in the case record, which includes opinion evidence from "other sources." SSR 06-03p, 71 Fed.Reg. 45593-03, at *45596. "Other sources" includes "educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and day center workers." *Id.* at *45594. While other sources "cannot establish the existence of a medically determinable impairment," they are considered "valuable sources of evidence for assessing impairment severity and functioning." *Id.* The ALJ should consider the following five factors when evaluating a teacher's opinion: 1) whether the source has examined A.L.D.; 2) whether a treatment relationship exists; 3) the supportability of an opinion; 4) the consistency of the opinion with other evidence in the record; and 5) the specialization of the source giving the opinion. *Id.* at *45594. The Seventh Circuit has found that failure to discuss portions of teacher reports that were favorable to the claimant amounts to reversible error. *See Hopgood v. Astrue,* 578 F.3d 696, 700 (7th Cir. 2009); *see also Murphy v. Astrue,* 496 F.3d 630, 634-35 (7th Cir. 2007) (reversing the ALJ's failure to address school records that were contrary to his conclusion).

In order to remand on these grounds, we must find that the ALJ's assessment of Ms. Sund's opinion lacks evidentiary support or an adequate discussion of the factors outlined above. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (reversing an ALJ's decision where the 7th Circuit found that the ALJ discounted uncontradicted evidence without explaining his reasons for doing so). While we may not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment, the court is entitled to perform a critical review of the evidence. *Id.* We cannot uphold a

17

decision that fails to mention highly pertinent evidence, or that because of contradictions and missing premises, fails to build a logical bridge between the facts of the case and the outcome. *Id.*

After our review of the ALJ's decision, we agree with Dean that the ALJ's decision to give little weight to Ms. Sund's opinion lacks evidentiary support and adequate analysis. The ALJ only stated that he was disregarding her opinion because the state agency medical sources provided opinions that were "more consistent with medical and education records in evidence." In finding that claimant does not have a marked limitation in the Attending and Completing Tasks domain, the ALJ stated that the claimant had showed some improvement during his 2012 IEP examination and had continued to take Adderall to treat his concentration difficulty. However, the ALJ failed to address Ms. Sund's findings that he had "serious" and "very serious" limitations in twelve out of the thirteen categories in this particular domain, nor did he specify which medical evidence contradicted her findings. Ms. Sund noted that claimant is distracted very often, he is unable to finish his work on time and "re-direction is required constantly." Ms. Sund also found that in the Acquiring and Using Information domain, claimant had a "serious" or "very serious" problem in seven out of the ten categories, including comprehending instructions, understanding class discussion, learning new material and problem solving. The ALJ should have addressed these findings and explained how they were inconsistent with the other medical evidence, or at the very least, he should have indicated which evidence contradicted Ms. Sund's findings. The ALJ also should have considered Ms. Sund's relationship to claimant, the length of that relationship, and the other relevant factors. Instead, the ALJ only vaguely referenced

18

contradictory medical evidence.

While there is evidence in the record that A.L.D.'s articulation had improved, the record also contains numerous references to his continued inability to focus and concentrate, consistent with Ms. Sund's findings. Indeed, Ms. Williams, who was Ms. Sund's predecessor, reached the same conclusions as Ms. Sund. Ms. Williams also found that A.L.D. had "slight" to "serious" limitations in the Acquiring and Using Information domain and "slight" to "mostly obvious" problems in the Attending and Completing Tasks domain. The ALJ also gave her opinion only slight weight even though he acknowledged the consistencies in the opinions of these two teachers. Based on their consistent opinions, the ALJ needed to more adequately articulate why he was discrediting both teachers in light of the factors referenced above. *Compare Brown v. Colvin,* No. 14 C 5095, 2015 WL 4576737, at *11 (N.D. Ill. July 29, 2015) (holding that the ALJ properly disregarded the report of claimant's teacher when that report was inconsistent with the reports of other teachers).

Notably, Ms. Sund indicated that she was in her second year acting as claimant's special education teacher. Ms. Sund also indicated that she was with A.L.D. daily for reading and math and she spends about 700 minutes with him per week. In light of her involvement in A.L.D's performance at school, the ALJ was required to, at a minimum, explain with more specificity why he was not crediting her opinion that A.L.D. had significant limitations in two domains. *See, e.g.*, *Robinson v. Astrue,* No. 10 C 5056, 2012 WL 3991625, at *12 (N.D. Ill. Aug. 29, 2012) (remanding based on ALJ's failure to properly credit teacher who found that the claimant had serious or obvious problems after spending more than 372 hours a week with claimant); *Hopgood,* 578 F.3d at 700

19

(remanding because "the ALJ failed to explain why he did not credit portions of the record that were favorable to [claimant], including teachers reports that found...serious or obvious problems in this domain."); *Murphy*, 496 F.3d at 634-35 (reversing ALJ's decision where he "did not explain why he gave no weight to the portions of the school documents which support a finding that [claimant] is disabled" and "did little to counter this evidence").  The time both teachers spent with A.L.D. is especially noteworthy given that the state agency evaluators, who the ALJ did rely on, spent only a very brief time with claimant.  By failing to evaluate or analyze Ms. Sund's opinion, the ALJ has failed to build a logical bridge from the facts to the conclusion, and this warrants reversal. *Hopgood,* 578 F.3d at 700.

**B.  The ALJ Erred in Not Addressing Whether A.L.D. Meets Listing 112.05D**.

We next address Dean's argument that the ALJ erred because he failed to consider whether A.L.D. met Listing 112.05D.  The ALJ began his discussion of the Listings by stating that A.L.D. did not meet either Listing 112.02 or Listing 112.05D.  But then, in his discussion, the ALJ only addressed Listing 112.02, with no further discussion of Listing 112.05D.  Dean argues that there is ample evidence in the record that A.L.D. does meet Listing 112.05D and for this reason, she argues that remand is appropriate.

The Listings identify and describe impairments that the SSA considers severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience.  20 C.F.R. § 404.1525(a).  A claimant bears "the burden to present medical findings that match or equal in severity all the criteria specified by a listing."  *Knox v. Astrue*, 327 Fed.Appx. 652, 655 (7th Cir. 2009) (citing *Sullivan v.*

*Zebley*, 493 U.S. 521, 531 (1990)); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The regulations do not require that an ALJ include every possible Listing that might apply. Nor has the Seventh Circuit mandated such a requirement. *Rice v. Barnhart*, 384 F.3d 363, 369–70 (7th Cir. 2004).

A claimant meets Listing 112.05D if he has significantly sub-average general intelligence, and specifically "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant limitation of function." Dean contends that claimant has an IQ of 68, and therefore, has met the first prong of the test for Listing 112.05D. Dean cites to claimant's Wechsler Preschool and Primary Scale of Intelligence Test, dated March 17, 2012, in support of this argument. That test revealed that A.L.D.'s verbal IQ was 85, his nonverbal IQ was 67, and his full-scale IQ was 73 - therefore, A.L.D. meets the first prong of 112.05D. The Commissioner argues that because two of the state agency examiners found that A.L.D. did not meet any of the Listings, the ALJ was not required to address this. In any case, the Commissioner asserts, it was harmless error because there is not ample evidence in the record to support a finding that A.L.D. meets Listing 112.05D.

Because we have already determined that a remand is appropriate here, we will touch only briefly on this issue. We agree with Dean and find the ALJ should have addressed with additional detail whether A.L.D. meets Listing 112.05D. There is no question that A.L.D. meets the first prong of this Listing because of his IQ test results. The ALJ should have noted this and evaluated whether he met the second prong. Indeed, the ALJ even referenced the application of this Listing, albeit only cursorily, at this outset of the Listing discussion of his opinion. The Court acknowledges that an ALJ

21

is not required to include every possible listing that might apply.  *Nelson v. Colvin,* 13 C

626, 2015 WL 1806042, at *2 (N. D. Ill. Apr. 16, 2015).  However, here the ALJ referred

to 112.05D.   After making this reference, he should have followed with further

discussion of the requirements, as he did with Listing 112.02.  On remand, the ALJ

should address A.L.D.'s IQ scores and consider whether he meets the other

requirements in Listing 112.05D.

### C.  Remaining Arguments

Dean has two remaining arguments.  The first is whether the ALJ erred in

assessing Dean's credibility.  Dean's discussion on this issue is quite brief so we are not

inclined to give it much analysis since we have already determined that remand is

appropriate here.  On remand, with respect to claimant's credibility argument, we direct

the ALJ to carefully make a credibility finding by referring to the Social Security

regulations.  Since the ALJ's decision in this case, the SSA has issued a new ruling on

how ALJs must evaluate a claimant's statements about the intensity, persistence, and

limiting effects of an alleged disability. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

That ruling "eliminat[es] the use of the term 'credibility' from [the ALJ's] sub-regulatory

policy" and "[i]n doing so, ... clarif[ies] that subjective symptom evaluation is not an

examination of an individual's character."  *Id.* at *1.  Under the new rule, "in considering

the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ

must] examine the entire case record, including the objective medical evidence; an

individual's statements about the intensity, persistence, and limiting effects of

symptoms; statements and other information provided by medical sources and other

persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

This requires that an ALJ's determination or decision regarding credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

The last remaining issue is whether the ALJ utilized the correct standard in evaluating A.L.D's functional equivalence in comparison with other children the same age who do not have impairments. The parties disagree about which age group should have been utilized for the comparison. In light of the fact that A.L.D. has aged since the case was before the ALJ the first time, on remand, the ALJ is directed to utilize a new standard that appropriately relates to A.L.D.'s age at the time of the rehearing.

## III. CONCLUSION

For the reasons set forth above, A.L.D.'s motion for summary judgment is granted in part and the Commissioner's motion for summary judgment is denied. The case is remanded to the Social Security Administration for further proceedings consistent with this opinion. It is so ordered.


**ENTERED:**

**/s/ Michael T. Mason**
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:       March 31, 2017**